In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2479

JACK WAINSCOTT,

*Plaintiff-Appellee,*

*v.*

WILLIAM R. HENRY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 00 C 393—**William C. Lee**, *Chief Judge.*

ARGUED NOVEMBER 4, 2002—DECIDED JANUARY 17, 2003

Before BAUER, KANNE, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-Appellee Jack Wainscott brought a suit alleging violations of his First and Fourteenth Amendment rights after being terminated from his job with the City of Marion Streets and Sanitation Department. Wainscott named William R. Henry, Mayor of the City of Marion, Indiana, and three members of the Marion Board of Public Works and Safety as defendants. The suit against the board members was dismissed, and the district court granted summary judgment in favor of Wainscott on his First Amendment claim against Mayor Henry. The mayor appeals, arguing Wainscott's statements are not protected under the First Amendment and that Wainscott was properly afforded due process. For the

reasons set forth below, we affirm the decision of the district court.

## I.  BACKGROUND

Jack Wainscott is an employee of the City of Marion Streets and Sanitation Department ("Department"). He was initially hired as a laborer and equipment operator but was later promoted to assistant to the Superintendent of the Department. In 1998, Republican mayor Ron Mowery appointed Wainscott as the Superintendent of the Department. In November 1999, Democrat William Henry was elected mayor of the City of Marion. Prior to being sworn in, Mayor Henry confronted Wainscott after learning that Wainscott intended to embarrass the new administration by neglecting to maintain adequate supplies of necessary materials. The mayor told Wainscott that he would not tolerate lying and that if Wainscott lied, he would "fire [his] ass in a heartbeat."

Before Mayor Henry took office, Wainscott stepped down as Superintendent and returned to a nonsupervisory position within the Department. In January 2000, Jack Antrobus, the new Superintendent of the Department, told the mayor that Wainscott was encouraging Department employees to file grievances and cause trouble for the new mayor. Wainscott disputed these allegations and requested a meeting with the mayor, Antrobus, and representatives of Wainscott's union. After the meeting, Wainscott signed a written agreement in which he agreed to the following: "(1) reduction in senority; (2) do your job to the best of your ability; (3) stay low-key as it pertains to the Union; (4) do not advise other employees on grievances; (5) stay in the street Department where you were originally hired."

On August 16, 2000, Wainscott and a fellow employee were working on a demolition job at a house on Branson

Street in Marion. While at the site, Fred Troxel, a Marion resident and political supporter of Mayor Henry, approached the two men and began conversing. The group was joined by David Bennet, a driver for a waste management company, who had arrived to deliver a dumpster for a demolition project. Wainscott, who had been wearing a protective mask while working, showed the mask to the group and, according to Troxel, stated, "this is the kind of junk they give us to work with." As the conversation continued, a question arose as to where Bennet was to deliver the dumpster. Troxel maintained that Wainscott responded, "the city administration did not know what it was doing from one day to the next." Later that day, Troxel called Mayor Henry and reported the comments made by Wainscott.[1] Mayor Henry regarded Wainscott's statements as false and believed that they were grounds for dismissal. The next day the mayor organized a meeting with Wainscott, Antrobus, and two union representatives. During the meeting, the mayor handed Wainscott a letter that stated: "Dear Jack Wainscott, You are hereby terminated for insubordination. You had previously been warned on May 1, 2000. The insubordination occurred on August 16, 2000, on the 100 block of North Branson Street. Sincerely, /s/ William R. Henry." Wainscott became upset after reading the letter and began interrupting the mayor as he attempted to speak. Mayor Henry informed Wainscott that he would ask the police to remove him if he tried to talk again.

Wainscott filed a grievance protesting his termination and was given a post-termination hearing. The Marion Board of Public Works and Safety ("Board") conducted the hearing and concluded that Wainscott should be suspended 45 days without pay and be reinstated on October

---

[1] As luck would have it, Mayor Henry drove by and waved to the group while this conversation occurred.

1, 2000. The Board also placed Wainscott on a six-month probationary period during which he was not permitted to make any statements concerning management issues, decisions, or policies of the administration.

Wainscott proceeded to file suit against Mayor Henry in his official capacity, and Londelle White, James Duncan, and Pam Hutcheson, in their official capacities as members of the Board. His complaint alleged the defendants violated his First Amendment right to free speech and his Fourteenth Amendment right to due process. The claims against defendants White, Duncan, and Hutcheson were eventually dismissed. The district court granted Wainscott's motion for summary judgment as to Mayor Henry's liability, leaving for determination only the issue of damages suffered by Wainscott. The parties entered a stipulation as to the amount of damages while reserving the right to appeal the district court's summary judgment order. The mayor has exercised this right and now appeals the district court's grant of summary judgment.

## II.  DISCUSSION

We review a district court's grant of summary judgment *de novo*. *EEOC v. Sears*, 233 F.3d 432, 436 (7th Cir. 2000). Summary judgment is proper if there is no dispute as to material facts, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In addition, whether an employee's speech is a matter of public concern is a question of law we review *de novo*. *Marshall v. Porter County Plan Comm'n*, 32 F.3d 1215, 1219 (7th Cir. 1994).

### A.  *Application of the* Connick-Pickering *Test*

Mayor Henry claims that Wainscott's speech is not protected by the First Amendment. We evaluate whether

an employee's speech deserves First Amendment protection under the two-part test established in *Pickering v. Board of Educ.*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983). *Gonzalez v. City of Chicago*, 239 F.3d 939, 940-41 (7th Cir. 2001). This analysis requires us first to determine whether the employee spoke as a citizen upon matters of public concern. *Connick v. Myers*, 461 U.S. 138, 147 (1983). If the speech addresses a matter of public concern, we will balance the employee's interest in commenting upon such matters and the employer's interest in efficient public services. *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968).

The statement to which we are applying the *Connick-Pickering* test is Wainscott's remark that "the city administration does not know what it is doing from one day to the next." The district court found that Wainscott's statement referring to his mask as "junk" was a personal grievance, not a matter of public concern. Moreover, Wainscott never argued to the district court, nor to this court, that the quality of the mask was a matter of public concern. Thus, we need only consider Wainscott's statement criticizing the city administration, which the district court found qualified as speech on a matter of public concern. The district court reasoned that this speech would have been protected had it been made by a private citizen rather than a city employee. We now consider whether the district court was correct in its conclusion that the administration's alleged inefficiency is a matter of public concern.

### 1. Matters of Public Concern

Our determination of whether Wainscott's statement dealt with a matter of public concern requires us to consider "the content, form, and context of a given statement as revealed by the whole record." *Connick*, 461 U.S. at

147-48. Of these three elements, content is the most important factor. *Yoggerst v. Hedges*, 739 F.2d 293, 296 (7th Cir. 1984). We have noted that speech is directed at a matter of public concern if it relates to any matter of "political, social, or other concern to the community." *Kuchenreuther v. City of Milwaukee*, 221 F.3d 967, 973 (7th Cir. 2000), *quoting Connick*, 461 U.S. at 146. A matter is not of public concern if it involves a personal grievance of interest only to the employee. *Gustafson v. Jones*, 290 F.3d 895, 907 (7th Cir. 2002).

Mayor Henry argues that Wainscott's statement is not protected by the First Amendment because it does not involve matters of public concern. He claims that Wainscott spoke more like a disgruntled employee than a citizen. In addition, he argues that the context and form of the statement reveal that Wainscott was attempting to articulate his personal dissatisfaction for the new city administration since he was no longer the Superintendent of the Department.

Whether the city is run in an efficient and effective manner is clearly an important matter of public concern. An employee's ability to highlight the misuse of public funds or breaches of public trust is a critical weapon in the fight against government corruption and inefficiency. *See, e.g.*, *Propst v. Bitzer*, 39 F.3d 148, 152 (7th Cir. 1994); *Conner v. Reinhard*, 847 F.2d 384, 390-91 (7th Cir. 1988). We would be remiss not to protect an employee's ability to expose such things. In addition, most people would likely have an interest in the possible incompetence of public officials. "Speech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests." *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988). If the administration was truly running the city in a highly inefficient manner, it would constitute a "'breach of public trust' which the Court in *Connick* sug-

gested might qualify for protection." *Breuer v. Hart*, 909 F.2d 1035, 1038 (7th Cir. 1990). It is clear from the text of Wainscott's statement that he did not apprise his audience of shocking revelations or insightful analysis as to why the administration is incompetent. However, it does not matter that the statement at issue was not of "transcendent importance" or consider "the origins of the universe or the merits of a constitutional monarchy." *Dishnow v. School Dist. of Rib Lake*, 77 F.3d 194, 197 (7th Cir. 1996).

If Wainscott's statement had been made by a private citizen, it would have been entitled to First Amendment protection. *See Khuans v. School Dist. 110*, 123 F.3d 1010, 1016 (7th Cir. 1997) ("Public criticism of a government employer's policies can be protected speech."). The fact that Wainscott wears the badge of a city employee cannot, in these circumstances, take his statement outside the First Amendment context. This is especially true given the content of his statement. It was a vague remark which revealed no privileged or sensitive information and was made in direct response to a situation evolving before him. David Bennet, the waste disposal employee, had not been given an exact location of where to deliver the dumpster. It appeared to Wainscott that even such a simple task as this could not be properly handled by the city, prompting this remark. Thus, his motivation was to express his displeasure with how the city was handling its day to day affairs. Wainscott, as a taxpayer, had obvious reasons to be concerned that the municipality was being run in an incompetent fashion. The underlying circumstances and the speaker's motivation both reveal that the statement dealt with a matter of public concern in which Wainscott spoke more like a citizen than a disgruntled employee.

The mayor fails to acknowledge this court's determination that "the content factor is most important" in the *Connick* inquiry. *Yoggerst v. Hedges*, 739 F.2d 293, 296 (7th

Cir. 1984). The mayor gives short shrift to the content of Wainscott's statement and instead focuses on its context. Animosity in a supervisor-subordinate relationship cannot be the sole basis for characterizing an unflattering statement as a personal grievance. Such a position would suggest that any statement with negative overtones made by an employee would be grounds for dismissal. We cannot accept an argument that could lead to this outcome. We do not dispute that Wainscott's complaints may have had roots in his negative relationship with Mayor Henry. However, as we noted in *Breuer*, this alone does not disqualify a speaker from protection. *Breuer v. Hart*, 909 F.2d 1035, 1039 (7th Cir. 1990). Wainscott himself does not contest that his relationship with the mayor was far from cordial. But to use the nature of this relationship as the basis for the conclusion that this was a statement of personal interest is highly tenuous. An employee's speech on matters that might otherwise be protected cannot lose protection solely as a result of a history of animosity. For the reasons noted above, we find Wainscott's statement was addressed to a matter of public concern.

We have held that "speaking up on a topic that may be deemed one of public importance does not automatically mean the employee's statements address a matter of public concern as that term is employed in *Connick*." *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999). In making this determination, we must look at the point of the speech. *Id.* Was the point to further some purely private interest? *Id.* It is clear in the case before us that the purpose of Wainscott's statement was not to further a private interest. Venting his concerns about the city's alleged incompetence raises an issue of public concern, not a private interest.

The mayor attempts to convey that Wainscott had a personal interest in his remark about the administration

by pointing to his complaint about the "junk" mask. How-
ever, these are two separate and distinct statements, one of
which is not at issue. While we may consider Wainscott's
comment regarding the mask in the overarching context
of the case, we look at his remark about the administra-
tion in isolation for purposes of determining whether he
was attempting to further a personal interest. Wainscott's
expression did not concern the effect the city's alleged
incompetence had upon him personally. Instead, it was
a basic criticism in which he offered no elucidation. As
Wainscott notes, other than his interest as a taxpayer,
he had no personal or pecuniary interest in the place-
ment of dumpsters, or for that matter, in the manage-
ment of the city as a whole. Mayor Henry never clearly
explains how Wainscott's statement furthered a personal
interest as opposed to raising a matter of public concern.
Instead, he relies on conclusory assertions. The *Connick-
Pickering* test requires more than just conclusory lang-
uage. The district court properly found that Wainscott's
speech was not in the form of a personal grievance, but
a matter of public concern.

### 2. *Balancing the Employee's and Employer's Interests*

We now consider whether Wainscott's interest in speak-
ing out about Mayor Henry's administration can be bal-
anced with the city's interest in efficient public services.
There are four factors that we consider in balancing the
employee's First Amendment interest against the em-
ployer's need to manage the workplace:

> (1) whether the speech would create problems in
> maintaining discipline or harmony among co-workers;
> (2) whether the employment relationship is one in
> which personal loyalty and confidence are necessary;
> (3) whether the speech impeded the employee's ability
> to perform his responsibilities; (4) the time, place and

manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general public.

*Greer v. Amesqua,* 212 F.3d 358, 371 (7th Cir. 2000). The proper balance of these competing interests is a question of law. *Propst v. Bitzer*, 39 F.3d 148, 152 (7th Cir. 1994).

Mayor Henry has the burden to show that a governmental interest outweighs Wainscott's interest in speech. *Coady v. Steil*, 187 F.3d 727, 732 (7th Cir. 1999). The mayor argues that Wainscott's statement had the potential to create problems in maintaining discipline and harmony within the Department. In addition, he claims that since Wainscott spoke more as a disgruntled employee and addressed matters regarding the internal operation of the Department, the balancing test favors the employer. Mayor Henry has failed to meet his burden of proof.

Wainscott was not in a position which entailed supervisory or managerial duties. While Wainscott may have had some influence over co-workers as the former Superintendent, there was no evidence supporting this proposition. Mayor Henry engages in speculation about the "distinct potential" that problems might arise because of Wainscott's statement. A public employer has the right to consider the potential disruption of an employee's speech. *Waters v. Churchill*, 511 U.S. 661, 677 (1994); *Caruso v. DeLuca*, 81 F.3d 666, 670-71 (7th Cir. 1996). However, pure speculation is not enough to meet the burden of proof. We acknowledge the Court's contention that we "look to the facts as the employer reasonably found them to be," as opposed to what the employee claims occurred. *Waters v. Churchill*, 511 U.S. 661, 677 (1994). *See also Weicherding v. Riegel*, 160 F.3d 1139, 1143 (7th Cir. 1998). However, the mayor glosses over the term "reason-

ably." Employees periodically criticize the inefficiency of their employer. To suggest the vague criticism that "the city administration does not know what it is doing from one day to the next" made to a single co-worker would spread like wildfire and reek havoc in the Department is, at best, dubious. We are not suggesting that the mayor must show actual disruption before he can carry his burden. In fact, we have noted that a public employer does not have to wait "until those working relationships actually disintegrate if immediate action might prevent such disintegration." *Breuer v. Hart*, 909 F.2d 1035, 1040 (7th Cir. 1990); *see also Connick*, 461 U.S. at 152. However, we fail to see the connection between a generalized statement that lacked any acidity and the potential for a mass uprising. It would take far more than Wainscott's remark to spark the negative reaction Mayor Henry envisions. The mayor's reasoning fails to persuade us that a potential threat to discipline or harmony exists in the Department as a result of the words of Wainscott.

Mayor Henry concedes that Wainscott's position did not require personal loyalty and confidence and also admits that the comment had no negative impact on Wainscott's performance. The mayor contends, however, that the time, place, manner, and context of the speech weigh in favor of the city's interest of promoting the efficiency of its public services. He points out that Wainscott made the statement at a job site, during working hours, and in the midst of a personal dispute with Mayor Henry. He argues that Wainscott made his remark at an inappropriate time and in an inappropriate place. In considering the content and context of the speech, we look at whether the employee could have spoke in a fashion which would have resulted in less turmoil and confusion. *Myers v. Hasara*, 226 F.3d 821, 828 (7th Cir. 2000). As we have noted, Wainscott's statement was exceedingly bland and made in an offhand manner to three other people, only one

of whom was a fellow employee. We do not see how Wainscott's statement could cause turmoil or confusion in these circumstances. Given the time, place, and content of the statement, we cannot conclude that the speech would affect the ongoing work of Department employees. Accordingly, we find that a substantial majority of the factors of the *Pickering* balancing test weigh in favor of Wainscott's interest in commenting upon the Henry administration.

The mayor, in his argument, is asking us essentially, to give a governmental entity the right to terminate employees if they criticize their employer. This runs counter to the most basic understandings of the First Amendment. Employees of governmental entities generally should be able to complain or criticize; it highlights inefficiencies and promotes a more effective system of government. For these reasons, we find Mayor Henry violated Jack Wainscott's First Amendment right to freedom of speech when he terminated his employment with the city.

### B. *Due Process*

Mayor Henry also claims the district court erred when it found Wainscott was not provided appropriate due process. The mayor contends that Wainscott was given a full and fair evidentiary hearing prior to having his employment with the city terminated. The district court granted summary judgment to Wainscott on the issue of due process; we review *de novo*.

The Due Process Clause requires that individuals have an opportunity to be heard "at a meaningful time and in a meaningful manner" regarding the deprivation of life, liberty, or property. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Governmental employers must recognize their employees' property interest in continued employment. *Id.*

To respect this interest, a public employer must provide certain pre-termination procedures before removing an employee. These include (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his side of the story. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 804 (7th Cir. 2000).

Before we consider the substantive aspects of the due process issue, we must first resolve when, if at all, Wainscott was actually terminated. If Wainscott was not terminated, but rather placed on suspension pending a review by the Board of Public Works, then Wainscott would not be entitled to the proper due process requirements. Perhaps realizing the lack of persuasiveness of his argument, Mayor Henry changed his position during the course of the proceedings and began contending that Wainscott was never terminated. This position is in stark contrast to the testimony of those at the August 17 meeting and to Mayor Henry's August 17 letter to Wainscott that stated, in part, "You are hereby terminated for insubordination." The sliver of support upon which he relies is the fact that Wainscott's medical insurance was never discontinued. The district court considered this a "scintilla of evidence supporting [Mayor Henry's] position and thus it is inadequate to surpass summary judgment on this claim." We agree.

We find that the mayor's argument essentially highlights one, inconsequential, marginally reliable piece of evidence while ignoring a substantial amount of credible and highly relevant evidence. We need only look to the factual background, the mayor's deposition, his actions at the August 17 meeting, his letter to Wainscott, and his statements at the Board of Public Works hearing. Thus, these various pieces of evidence, most from Mayor Henry

himself, point to the conclusion that the mayor fired Wainscott on August 17.

Having determined that Wainscott was terminated on August 17, we now must consider whether Mayor Henry afforded Wainscott proper due process. As we noted above, due process requires that governmental employers give proper notice when terminating employees. *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532 (1985). The mayor ignores the plain import of *Loudermill* and its progeny. *Loudermill* forbade public employees from terminating an employee without a prior hearing. *Id*. at 542. The mayor neglects to apply the requirements set forth in *Loudermill* to the underlying facts.

*Loudermill* held that a pre-termination hearing requires notice of the charge, an explanation of the basis for the charge, and an opportunity for the employee to respond. *Loudermill*, 470 U.S. at 546. It is clear the mayor failed to meet the *Loudermill* requirements. It was undisputed that Wainscott did not know the purpose of the August 17 meeting. Thus, he first became aware of his termination when he read the opening words of the mayor's letter, "You are hereby terminated for insubordination." This could not even be described as contemporaneous notice, which we have suggested could satisfy due process. *See Staples v. City of Milwaukee*, 142 F.3d 383, 387 (7th Cir. 1998).

We have determined that the notice requirement is properly met if "it is reasonably calculated to apprise interested parties of the proceeding and afford them an opportunity to present their objections." *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 804 (7th Cir. 2000). Mayor Henry failed to meet this requirement. Wainscott had no idea what the subject of the meeting concerned. Thus, not only was notice not reasonably calculated, it was not calculated at all. Secondly, the

mayor's actions gave Wainscott no opportunity to present objections. By not providing notice, Mayor Henry prevented Wainscott from developing and preparing any defenses, explanations, or objections.

So the mayor failed to meet the first requirement of *Loudermill*. For the reasons that follow, we also find he has failed to meet the second and third requirements. *Loudermill* requires that the mayor provide Wainscott with an explanation of his evidence supporting the termination. Wainscott's termination was notable for its lack of any factual investigation by the mayor. Mayor Henry based his decision to fire Wainscott on the information he received in the phone call from Troxel. The mayor did not speak with Wainscott or any of the other people involved in the conversation on Branson Street before deciding to discharge Wainscott. Nor did the mayor explain the conduct Wainscott engaged in that the Mayor considered to be insubordinate. He essentially let his three sentence letter do his explaining for him. This simply does not comport with proper due process requirements. As a public employee, Wainscott had a constitutional right "to a fair hearing before being fired and that . . . includes the right to be shown the evidence on which the tribunal has relied." *Swank v. Smart*, 898 F.2d 1247, 1256 (7th Cir. 1990). The record leaves no doubt as to the lack of any substantive explanation of the evidence.

Finally, the mayor was required to give Wainscott a "meaningful opportunity" to respond to the charge. *Loudermill*, 470 U.S. at 543. A "meaningful opportunity" is one which occurs "before the termination takes effect." *Id*. The record reveals that Wainscott never had any opportunity to respond, let alone to give a meaningful response. The mayor had already written the letter describing the termination and gave it to Wainscott. When Wainscott first received the letter and read its contents, the termination had already taken effect. For these reasons, we find the

district court's determination that there was no genuine issue of material fact with regard to the mayor's due process violation correct.

## III.  CONCLUSION

Jack Wainscott's speech dealt with a matter of public concern and therefore deserves First Amendment protection. Mayor Henry's termination infringed upon Wainscott's First Amendment right to free speech and violated his right to due process. Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
