**Alfred E. SCHMIDT, Plaintiff,**

**v.**

**LINCOLN COUNTY, STATE OF WISCONSIN, Peter Kachel, P.E. Highway Commissioner, and Lincoln County Highway Committee, Defendants.**

No. 02–C–286–C.

United States District Court, W.D. Wisconsin.

March 18, 2003.

Alfred E. Schmidt, Merrill, WI, Pro se.

Todd L. Lemanski, Piehler & Strande, S.C., Wausau, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary relief in which *pro se* plaintiff Alfred E. Schmidt alleges that defendants Lincoln County, Peter Kachel and the Lincoln County Highway Committee violated his rights under the First Amendment, the Fourteenth Amendment's equal protection clause and state law by refusing to sell him road salt or other materials in retaliation for com-

ments he made at a county board meeting. Jurisdiction is present. 28 U.S.C. §§ 1331, 1367.

The case is before the court on defendants' motion for summary judgment. Because I conclude that plaintiff has failed to adduce any evidence indicating that he was retaliated against for the exercise of his First Amendment rights as a result of an official municipal policy or custom, I will grant summary judgment in favor of defendant Lincoln County on plaintiff's constitutional claims. Because plaintiff has produced no evidence from which it can be inferred that the members of defendant Lincoln County Highway Committee were responsible for the county's refusal to sell him road salt or other materials, I will grant the committee's motion for summary judgment as well. However, I will deny defendant Kachel's motion for summary judgment on plaintiff's First Amendment retaliation claim. Indeed, because the record makes clear that defendant Kachel retaliated against plaintiff for exercising his First Amendment rights at a September 22, 1998 Lincoln County Board of Supervisors meeting, I will grant plaintiff summary judgment on this claim on the court's own motion. Because plaintiff's equal protection claim is merely a repackaging of his First Amendment retaliation claim, I will grant defendant Kachel's summary judgment motion as to the equal protection claim. Finally, I will dismiss plaintiff's state law claim for tortious interference with his business for his failure to state a claim upon which relief may be granted.

Before reaching the merits of defendants' summary judgment motion, a word on the parties' proposed findings of fact is necessary. On November 14, 2002, defendants filed their summary judgment motion and proposed findings of fact in support of the motion. Plaintiff's response to

defendants' motion was due on December 4, 2002, but he was granted an extension of time in which to respond until January 3, 2003. Although plaintiff met this deadline, the response he filed was not in compliance with the court's summary judgment procedures, a copy of which he had received along with the preliminary pretrial conference order in this case. In particular, plaintiff failed to respond to defendants' proposed findings of fact. In an order entered on January 24, 2003, the magistrate judge granted plaintiff an enlargement of time until February 7, 2003, in which to file a new response to defendants' summary judgment motion and sent plaintiff another copy of the court's procedures and a memorandum designed for *pro se* litigants regarding summary judgment motions. Plaintiff filed his revised response on February 10, 2003, but his response to defendants' proposed findings of fact still do not comply with the court's procedures. Specifically, plaintiff did not answer each numbered fact proposed by defendants in separate paragraphs using the same number, as required by the rules. Instead, he appears to have "responded" to the various section headings in defendants' first reply brief (I say "first" because defendants were permitted to file a second reply brief when plaintiff was allowed a second stab at responding to their summary judgment motion). Because plaintiff has failed twice to comply with the court's summary judgment procedures, I will accept as undisputed defendants' proposed facts, except those "facts" that are really conclusions of law and those that attempt to characterize documents submitted by plaintiff that speak for themselves.

Plaintiff is not alone in his failure to comply with the court's summary judgment procedures. In their proposed findings of fact, defendants routinely misidentify the dates on which certain meetings occurred and cite sections of the meeting transcripts that do not support the proposition they are asserting. I note also that plaintiff has sued three defendants: Lincoln County, Peter Kachel, and the Lincoln County Highway Committee. In their proposed findings of fact, defendants do not describe any of these defendants. In addition, they refer to a fourth defendant, "Defendant Lincoln County Highway Department," likely because plaintiff mentions the highway department several times in his amended complaint. However, the Lincoln County Highway Department has never been listed as a defendant in the caption on plaintiff's complaint or amended complaint, on the other documents plaintiff has filed with the court or in the orders already issued by the court in this case. Accordingly, any reference to the Lincoln County Highway Department as a defendant in this case in defendants' proposed findings of fact will be ignored.

For the purpose of deciding the pending motion, I find from the parties' proposed findings of fact that the following material facts are undisputed.

## UNDISPUTED FACTS

Plaintiff Alfred Schmidt is the owner of Merrill Pavers, L.L.C., a small business with gross sales under half a million dollars per year. Merrill Pavers is engaged in the grading of gravel, the laying of asphalt on private drives and the salting, sanding and removal of snow from roadways.

On September 22, 1998, plaintiff attended a Lincoln County Board of Supervisors meeting and successfully sought permission to address the board. (Defendants proposed as fact that this meeting took place on September 28, 2002, which it clearly did not, as is indicated by various documents the parties have submitted and the fact that this suit was filed in May 2002.) Plaintiff's comments are contained in a transcript of the meeting:

My name is Al Schmidt, and I've been doing business in this area as Merrill Pavers. The reason I'm here today is because I'm here to voice my concern and also [inaudible].

Now the way the Lincoln County Highway Department is treating its private contractors is [inaudible]. Now, if they bid jobs at an hourly rate, we don't have any problem with that because they charge more than we do. But the situation is [inaudible]. They're openly bidding on jobs before they're even starting. Now, I just don't know how a private person can compete against a public fund and public equipment under them circumstances. Now, they don't pay any license fees. They don't pay any taxes. They don't pay title tax, gas tax, [inaudible]. Also, I've been doing work for [inaudible] for 15 years and people have been happy. Now I hear rumors that Lincoln County Highway Department is [inaudible] back equipment that [inaudible]. I don't know if this is so or not, but in view of what's been happening over this past year, I believe it's [inaudible].

Now I'm just asking how you folks would like it if you were in the—this-somebody started taking over your livelihood and started a real estate business, started a factory, or started a store? I am speaking for the independent ·contractors in Lincoln County. I think that—you know, we're upset. I'm not the only one. I'm just the one here speaking to you. I'm speaking for everyone. We're upset. And if this doesn't stop, we're going to have to do something about it. We don't know what, but we're going to do something. So that's my speech—that's my speech to you gentlemen and you folks here, and I'll hope for the best, I guess.

Plaintiff was instructed by the Lincoln County Board of Supervisors to direct his grievance to defendant Lincoln County Highway Committee.

On November 6, 1998, defendant Peter Kachel, the highway commissioner, sent plaintiff a letter. The letter states in part:

I do not take lightly someone or a private contractor threatening the Highway Department. I see it as very serious and I will take whatever action I deem appropriate to protect the Highway Department.

The Highway Committee has asked that you attend a Committee meeting at your convenience to further explain your allegations and threats.

Effective the date of this letter, the County will not sell you or your agents any material or provide you with any type of service.

Subsequently, plaintiff had limited discussions with defendant Lincoln County Highway Committee in an effort to establish the legitimacy of his assertions. Plaintiff attended a December 22, 1998 meeting of the highway committee in order to substantiate the claims he made at the county board of supervisors' meeting on September 22, 1998. Defendants Lincoln County Highway Committee and Kachel were not satisfied with plaintiff's explanation, and the committee determined that plaintiff's allegations were not valid and "cast aspersions on the integrity of the Highway Department and the Committee." Defendant Lincoln County Highway Committee instructed defendant Kachel to draft a letter to plaintiff instructing him that the committee was not satisfied with the proof he offered in support of his allegations and that he should "either provide proof or a basis to his accusations or rescind his statements, offer an apology to the Committee and Highway Department in writing and the apology be read before the County Board." The letter from defendant Kachel also noted that "[i]f you

choose to respond to the Committee satisfactorily, consideration will be given to restoring our past relationship with your company."

Next, plaintiff addressed a meeting of the Lincoln County Board of Supervisors on December 21, 1999. Among other things, plaintiff noted

> I also came here today, I wanted to straighten out something about this threat stuff. When I said if you don't do something, I will, I meant that if needed I will [inaudible], I will look into this matter further. If I needed to go to the state or the federal government to get my answers, that's where I would probably go to. I didn't mean any physical harm to anyone.... Now I'm guessing that the—my so-called threat was considered offensive, and they demanded that I would either prove what I said, or apologize to them. Why do I have to prove what's common knowledge? Everybody else knows what's going on. It's just that they haven't had the nerve enough to stand up and say so. And why do I have to apologize for making my opinions and concerns known to our government?
>
> If you do bear with me, I would just like to read a law that was passed in 198[inaudible]. This was the First Amendment to the Constitution, which gives me the right to discuss openly and freely all matters of public concern; and to express viewpoints, no matter how controversial or unaccepted they may be. Isn't that what I done? I expressed my viewpoints. And of course, they were unaccepted. The letters I've received prove it. They were unacceptable.
>
> On my next point, I feel like I'm discriminated against. I'm the only—I'm the only known person that I know of in Lincoln County that's a small contractor that can't buy salt, sand or salt mix. Do you folks know how far I have to go for my salt? Two hundred miles. They're not running me out of business, but I still have a hard time....

After plaintiff spoke, the county board of supervisors asked for a response from the highway department, which defendant Kachel provided.

> On the agenda, it bothers me on the agenda it says here to speak on highway bidding process. Please, folks, we don't bid. It bothers me that it's written this way on the agenda and that's the way you see it. We don't bid, ever, ever. State statute doesn't allow us to bid. Okay, I don't want this—just make sure everybody understands it.
>
> All right. You've been asked about or you were asking about why we don't sell any material. And I'll tell you why. [inaudible] I'm not sure which one came in and [inaudible] more than once when where he was, well, let's say criticizing the highway department. And when you criticize the highway department, you're criticizing this commission, and I take it very, very personally.
>
> Now, for them to say that they are speaking in behalf of all the private contractors in Lincoln County, and then we check and we find out there's at least [inaudible] he wasn't talking for. In fact, they didn't know anything about it. So I felt that you were lied to. But as a result, I wrote the letter to Mr. Schmidt and [inaudible], saying that we would not supply [inaudible] material, nor give him any [inaudible] for the equipment, both of which we have done for a lot of [inaudible]. A long time [inaudible]. [inaudible] was [inaudible] helped to fix the equipment. I know he brought his equipment down by us [inaudible].
>
> That's why we are not selling [inaudible] material, because he ripped on our highway department. And now should I turn around and sell material that would

help somebody out that ripped on our highway department? I don't think so, folks.

Now, if somebody orders me to do that, I guess that's what we're going to have to do. But I don't see that somebody can criticize this [inaudible] and then come to this town board and says the highway commissioner and the highway department are discriminating against [inaudible]. I don't think that's appropriate.

Defendant Kachel maintained that several of the specific allegations plaintiff made were unfounded and that the county highway department does work for townships only upon request. The board of supervisors determined that defendant Kachel should address the next township association meeting about the Lincoln County Highway Department's duties and review its policy on the sale of materials.

On February 7, 2000, a meeting took place among plaintiff, Lincoln County's administrative coordinator John Mulder and defendant Kachel. An agreement was reached according to which plaintiff was allowed to purchase any road salt he needed for the remainder of the winter season. In a February 9, 2000 letter to plaintiff memorializing the meeting, Mulder notes that plaintiff "raised a number of valid questions about the role of the County Highway Department in providing services to the local private vendors and towns."

On June 5, 2000, plaintiff filed a notice of claim against defendant Lincoln County seeking $500,000. Defendant Lincoln County denied the claim promptly and issued a notice of disallowance that was signed by plaintiff's agent on June 26, 2000.

## OPINION

### A. *Municipal Liability*

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." In other words, a municipality cannot be held liable simply because one of its employees violates an individual's constitutional or federal statutory rights. Rather, the conduct complained of must result from an official municipal policy or custom in order to render the municipality liable. *See id.* To avoid imposing vicarious liability on a municipality, a "court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.' " *McMillian v. Monroe County*, 520 U.S. 781, 784–85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (quoting *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Not every municipal employee has the authority to speak definitively for the municipality and thereby expose it to liability. Only after "those officials who have the power to make official policy on a particular issue have been identified [may] the jury ... determine whether *their* decisions have caused the deprivation of rights at issue." *Jett*, 491 U.S. at 737, 109 S.Ct. 2702.

█ In addition to defendant Lincoln County, plaintiff has sued defendants Peter Kachel and the Lincoln County Highway Committee. (On the basis of plaintiff's amended complaint, I assume that he seeks to sue the individual members of defendant Lincoln County Highway Committee who "served from April 1998 thru April 2000" as well as the committee itself). To determine whether defendant Lincoln County is liable under § 1983, I must determine whether defendants Kachel or the highway committee members had final policymaking authority regarding

the sale of road salt and other materials at the time plaintiff was informed he could no longer buy such materials from the county. *See McMillian,* 520 U.S. at 785, 117 S.Ct. 1734 ("Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue," rather than in some generalized sense). The parties have not proposed *any* facts or cited any law regarding defendants Kachel or the highway committee members' responsibilities, let alone facts suggesting the degree to which they are authorized to exercise final policymaking authority on behalf of defendant Lincoln County. Indeed, it is not clear from plaintiff's complaint whether defendant Lincoln County Highway Committee is an independent legislative body, an organ of the Lincoln County Highway Department or, as seems most likely, a subdivision of the Lincoln County Board of Supervisors. Assuming that defendant Highway Committee is a county board committee, it is unclear whether its members may exercise final decision making authority on behalf of the full board or instead must have their decisions ratified by that body. Moreover, even though municipal liability may arise when a plaintiff shows "that the deprivation of [a] federally protected right was intentionally caused by the 'municipality's legislative body,'" *Hulbert v. Wilhelm,* 120 F.3d 648, 656 (7th Cir.1997), plaintiff has failed to adduce any facts regarding the precise role, if any, that defendant Lincoln County Highway Committee or its members played in refusing to sell him road salt or other materials.

▮▮▮ As for defendant Kachel, it appears from a letter incorporated into the amended complaint that he is the Lincoln County highway commissioner. "Deciding whether a specific official has final policymaking authority is a question of state law." *Horwitz v. Board of Education,* 260 F.3d 602, 619 (7th Cir.2001). Plaintiff has not proposed any facts or cited any law indicating that defendant Kachel was authorized to exercise final policymaking authority regarding the sale of road salt or other materials on behalf of defendant Lincoln County. Indeed, it appears that under Wisconsin law only a county board can supply the final word on county policy, at least in the absence of an explicit authorizing ordinance or resolution delegating such authority to another decision maker. *See* Wis. Stat. § 59.02 (1999–2000) ("The powers of a county as a body corporate can only be exercised by the board, or in pursuance of a resolution adopted or ordinance enacted by the board."); *Hulbert,* 120 F.3d at 656 ("Under this law, County corporation may exercise its powers either through the county board or by others acting under a resolution or ordinance of the board."). In response to defendants' summary judgment motion, plaintiff has identified *no such resolution, ordinance or similar delegation of power to defendant Kachel.* Because plaintiff has failed to adduce any evidence from which it could be inferred that his constitutional rights were violated by an official or governmental body authorized to exercise final policymaking authority on behalf of defendant Lincoln County, *see Venters v. City of Delphi,* 123 F.3d 956, 966 (7th Cir.1997), I will grant summary judgment in favor of defendant Lincoln County on all of plaintiff's constitutional claims.

In addition, I note that plaintiff does not specify in his amended complaint whether he is suing defendants Kachel and the members of the Lincoln County Highway Committee in their personal or official capacities. "[O]fficial-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In this case, that

means that an official-capacity suit against defendants Kachel and the county highway committee members is in reality a suit against defendant Lincoln County. *See id.* at 166, 105 S.Ct. 3099 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Therefore, to the extent plaintiff is suing defendants Kachel or the members of the highway committee in their official capacities, his failure to adduce evidence suggesting that they exercise final policymaking authority on behalf of the county dooms those claims. *See Horwitz,* 260 F.3d at 619.

### B. *Personal Liability*

#### 1. *Defendant Lincoln County Highway Committee*

■ As noted earlier, plaintiff has failed to adduce any facts regarding the precise role, if any, that defendant Lincoln County Highway Committee or its members played in refusing to sell him road salt or other materials. Although a letter from defendant Kachel that plaintiff incorporated into his complaint suggests that the members of the committee believed plaintiff owed them an apology, plaintiff has produced no evidence from which it can be inferred that the committee members (as opposed to defendant Kachel) were responsible for the decision to deny him access to road salt or other materials. Accordingly, I will grant summary judgment in favor of defendant Lincoln County Highway Committee.

#### 2. *Defendant Kachel*

■ According to defendants, because plaintiff failed to specify in his complaint whether he is suing defendant Kachel in his personal or official capacity, or both, the court must assume that Kachel is being sued in his official capacity only. Defendants cite *Graham,* 473 U.S. at 165, 105 S.Ct. 3099, for this proposition, but nothing in that case requires the court to make

such an assumption. Rather, in *Graham,* the Court simply notes that in "many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of the proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Id.* at 167 n. 14, 105 S.Ct. 3099 (citation omitted). The Court of Appeals for the Seventh Circuit has provided guidance to district courts addressing questions about the capacity in which a public official or municipal employee is sued. In *Hill v. Shelander,* 924 F.2d 1370, 1373 (7th Cir.1991), the court of appeals refused to read its precedents as establishing a rule that "a § 1983 action that fails to designate the defendant in his official or individual capacity shall be presumed to be against him in his official capacity." Instead, the court of appeals held that "in a suit where the complaint alleges the tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies, even if the plaintiff failed to spell out the defendant's capacity in the complaint." *Id.* at 1374. More recently, the court of appeals reaffirmed this approach in *Miller v. Smith,* 220 F.3d 491, 494 (7th Cir.2000), noting that where "the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity."

Plaintiff does not allege in his amended complaint that defendant Lincoln County has an official policy or custom of refusing to sell road salt to individuals who complain at county board meetings or, as noted earlier, that a person or persons exercising final policymaking authority on behalf of the county were responsible for the refusal to sell him road salt. Instead, plaintiff's complaint incorporates a letter

from defendant Kachel in which Kachel decries the "allegations and threats" plaintiff made "against the Highway Department regarding private work" at the September county board meeting. In the letter, defendant Kachel states that he does "not take lightly someone or a private contractor threatening the Highway Department" and that he "will take whatever action I deem appropriate to protect the Highway Department." Defendant Kachel signs off by stating that "[e]ffective the date of this letter, the County will not sell you or your agents any material or provide you with any type of service." By incorporating this letter into the complaint and alleging that he was retaliated against for exercising his First Amendment rights at the September county board meeting, plaintiff clearly alleged "tortious conduct of an individual acting under color of state law," and thus put defendant Kachel on notice that he was being sued in his individual capacity. *Id.*

This conclusion is bolstered by the fact that defendant Kachel has raised a defense of qualified immunity. Such a defense is "available solely to officials facing § 1983 suits in their individual capacities," and therefore supports an inference that the parties understood the suit to be against defendant Kachel in his individual capacity. *Id.; see also Conner v. Reinhard,* 847 F.2d 384, 394 n. 8 (7th Cir.1988) (defense of qualified immunity suggests that defendant is sued in his individual capacity, because that defense is unavailable in official capacity suits). Moreover, plaintiff noted in his response to defendants' summary judgment motion that the "suit against Mr. Peter Kachel is against Him as a personal capacity." Particularly because plaintiff is proceeding *pro se* in this case, it is unlikely that he "contemplated the nuances of § 1983 liability." *Shelander,* 924 F.2d at 1373. Therefore, it would be inappropriate to hold him to "restric-tive, overly technical pleading requirements." *Id.* Accordingly, plaintiff's failure to indicate in so many words that his suit is against defendant Kachel in his individual capacity is not fatal.

a. First Amendment claim

Plaintiff alleges that defendant Kachel retaliated against him for the exercise of his First Amendment rights by refusing to allow him to purchase county road salt and other materials because Kachel took exception to critical comments plaintiff made at a county board meeting. Defendants have responded to plaintiff's First Amendment claim on the assumption that plaintiff is suing both as a concerned county resident and an independent contractor employed by the county. Public employees' First Amendment claims must be evaluated in light of the two-part test established in *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), which balances the employee's interest in commenting on matters of public concern and the employer's interest in providing efficient public services. *See, e.g., Wainscott v. Henry,* 315 F.3d 844, 848 (7th Cir.2003). However, plaintiff has presented no evidence suggesting that he is an independent contractor employed by the county, so I need not consider what effect such a relationship would have on his First Amendment claim.

Because plaintiff is suing defendant Kachel in his individual capacity, Kachel "need not be shown to have acted according to municipal policy or custom to be held liable under section 1983." *Venters,* 123 F.3d at 966. A "public employee who retaliates against someone for engaging in protected speech may violate the First Amendment." *Abrams v. Walker,* 307 F.3d 650, 654 (7th Cir.2002); *Trulock*

*v. Freeh,* 275 F.3d 391, 404 (4th Cir.2001) ("[P]ublic officials are prohibited from retaliating against individuals who criticize them."). "In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) his conduct was constitutionally protected; and (2) his conduct was a 'substantial factor' or 'motivating factor' in the defendant's challenged actions." *Abrams,* 307 F.3d at 654. There is little doubt that when petitioner addressed a public meeting of the Lincoln County Board of Supervisors on September 22, 1998, he was engaged in an activity protected by the Constitution. "The rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment." *Dougherty v. North Hempstead Bd. of Zoning,* 282 F.3d 83, 91 (2d Cir.2002) (citing *United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967) (right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights" and is "intimately connected ... with the other First Amendment rights of free speech and free press")). This reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

Moreover, the record makes abundantly clear that plaintiff's comments to the county board were the reason he was no longer allowed to buy road salt from the county. In his November 6, 1998 letter to plaintiff, defendant Kachel says that plaintiff's "allegations and threats" at "the September County Board meeting" are the reason that the county stopped selling him road salt. *See* Am. Compl., dkt. #11, at 8,

Letter from Dft. Kachel to Plt. ("Effective the date of this letter, the County will not sell you or your agents any material or provide you with any type of service."). In a subsequent letter to plaintiff dated February 15, 1999, defendant Kachel demanded on behalf of the highway committee that plaintiff apologize for his comments at the September county board meeting. Defendant Kachel ended his letter by noting that if plaintiff chose "to respond to the Committee satisfactorily, consideration will be given to restoring our past relationship with your company." *Id.* at 9.

If these letters leave any room for doubt as to the reason plaintiff was denied access to county road salt, defendant Kachel supplies the proverbial smoking gun with his comments at a subsequent meeting of the county board on December 21, 1999. At that meeting, plaintiff told the board that he was being denied the ability to purchase road salt from the county in retaliation for his comments at the September 1998 board meeting. When the board asked for an explanation from a representative of the highway department, defendant Kachel responded: "That's why we are not selling [inaudible] material, because he ripped on our highway department. And now should I turn around and sell material that would help somebody out that ripped on our highway department? I don't think so, folks." Aff. of Todd L. Lemanski, dkt. #25, Ex. A, Tr. Tape 3, Side A, dated 12/21/99. These documents establish that the refusal to sell plaintiff salt "would not have occurred 'but for' [his] constitutionally protected conduct." *Abrams,* 307 F.3d at 654. Defendants do not point to any evidence suggesting they would have taken the same action even in the absence of plaintiff's protected conduct. *Id.*

■ Defendants argue that plaintiff's September 22, 1998 address to the county

board is not speech protected by the First Amendment because his comments are appropriately characterized as " 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Specifically, defendants focus on the portion of plaintiff's address in which he states: "We're upset. And if this doesn't stop, we're going to have to do something about it. We don't know what, but we're going to do something." Defendants' characterization borders on the preposterous, particularly when the alleged fighting words are viewed in the context of plaintiff's entire address to the board. Immediately following the excerpt that defendants emphasize, plaintiff wrapped up his oration by stating: "So that's my—that's my speech to you gentlemen and you folks here, and I'll hope for the best, I guess." It is hard to imagine that even the most thin-skinned elected official would understand these comments as capable of "incit[ing] an immediate breach of the peace." *Id.*

Nor is the dry medium of a transcript disguising what was in reality a heated tirade. Plaintiff has submitted a tape of the September county board meeting. The sound quality is poor, but it makes clear that plaintiff's speech was not delivered in a menacing tone. Defendants argue that plaintiff's comments were "a direct threat" to the board "to address his issue or face the consequences" and that they "greatly disrupted the tranquility of the meeting and provoked angry [sic] with the people present." Defendants point to no evidence supporting this conclusion. The transcript of the meeting does not indicate that it descended into chaos following plaintiff's speech. *See, e.g., Spence v. Washington*, 418 U.S. 405, 416, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (" 'But if absolute assurance of tranquility is required, we may as well forget about free

speech. Under such a requirement, the only 'free' speech would consist of platitudes.' ") (Douglas, J., concurring) (citation omitted). Indeed, plaintiff's comments apparently drew responses only from a single board member and the meeting's moderator, who thanked plaintiff for his comments. Lemanski Aff., dkt. #25, Ex. A, Tr. Tape 1, dated 9/22/98. Defendants argue in their brief that plaintiff "concedes that his statements were a direct threat to the Lincoln County Board of Supervisors and the Lincoln County Highway Committee," but this contention is frivolous. The portion of the record that defendants cite in order to show plaintiff's alleged concession shows just the opposite, as plaintiff refers to his "so-called threat" and takes issue with the notion that he was "threatening" anything other than to seek help from state or federal authorities. *Id.* at Tape 2, dated 12/21/99.

■ Finally, I note that it is no defense to plaintiff's First Amendment claim that the county had no obligation to sell road salt to private individuals such as plaintiff. Defendants do not dispute that they routinely sold road salt to other private parties after plaintiff was banned from making similar purchases. Defendants make an interesting but unavailing argument to the effect that it is illegal under state law for a county to sell road salt to private individuals. First, defendants cite only a 30–year old attorney general's opinion, which is not binding authority. Moreover, the fact that defendant Kachel could or even should have refused to sell road salt to any private individual does not alter the fact that plaintiff was the only person to whom Kachel refused to sell salt and the refusal was in retaliation for comments plaintiff made to the county board. It " 'is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section

1983 even if the act, when taken for different reasons, would have been proper.'" *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987).

In short, defendant Kachel has failed to show that he is entitled to summary judgment on plaintiff's First Amendment retaliation claim. Moreover, although plaintiff did not file his own summary judgment motion, because the record reflects so clearly that defendant Kachel retaliated against plaintiff for the exercise of his First Amendment rights, I will enter summary judgment for plaintiff on this issue on the court's own motion, as is permitted where the record reveals that the non-moving party is entitled to judgment. *Borcherding–Dittloff v. Corporate Receivables, Inc.,* 59 F.Supp.2d 822, 826 (W.D.Wis.1999); *see also* 10A Wright & Miller, *Federal Practice and Procedure* 3d § 2720 at 347 (1998) (summary judgment may be entered in favor of non-moving party even though no formal cross-motion has been filed). Plaintiff's First Amendment retaliation claim will proceed to trial solely on the issue of damages. I note that plaintiff would be well advised to hire a lawyer to represent him at trial. Plaintiff's response to defendants' summary judgment motion makes clear that he has difficulty following the court's procedural rules governing the submission of evidence. At trial, plaintiff will be required to prove what damages he suffered as a result of defendant Kachel's violation of his First Amendment rights. A lawyer's assistance will help insure that plaintiff complies with the relevant rules of evidence as he goes about proving his damages to a jury.

### b. Qualified immunity

Defendant Kachel argues that he is qualifiedly immune from plaintiff's First Amendment claim. If defendant Kachel is correct, he cannot be held liable for his actions. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). It "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994). The doctrine " 'gives public officials the benefit of legal doubts.'" *Id.* at 951 (citation omitted). Qualified immunity will shield defendant Kachel "from liability for civil damages if [his] actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Id.* at 2513 (citing *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). I have already concluded that defendant Kachel violated plaintiff's First Amendment rights when he refused to sell petitioner road salt because he was irked by plaintiff's remarks to the county board.

Because plaintiff has survived the threshold qualified immunity inquiry, "the next, sequential step is to ask whether the [constitutional] right was clearly established," an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151 (citing *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). "To show this, a plaintiff may point to closely analogous cases establishing that the conduct is unlawful, or demonstrate that the violation is so obvious that a reasonable state actor would know that what he is doing violates the Constitution." *Morrell v. Mock,* 270 F.3d 1090, 1100 (7th Cir.2001). "If the law did not put the officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. This is because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

It should have been obvious to defendant Kachel that he could not refuse to provide plaintiff with county supplies on the ground that plaintiff "ripped on [the] highway department" at a county board meeting. *See, e.g., Duran v. City of Douglas,* 904 F.2d 1372, 1378 (9th Cir.1990) ("[G]overnment officials ... may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows—or should know—that much."); *Barrett v. Harrington,* 130 F.3d 246, 264 (6th Cir. 1997) (county judge not entitled to qualified immunity from retaliation claim because "it is well-established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983."); *Dobosz v. Walsh,* 892 F.2d 1135, 1141–42 (2d Cir. 1989) (same). Accordingly, defendant Kachel is not entitled to qualified immunity from plaintiff's First Amendment retaliation claim.

c. Equal protection claim

Plaintiff also asserts an equal protection challenge in his complaint, but it has never been clear what type of equal protection claim he believes he has. In his amended complaint, plaintiff has included copies of a number of affidavits from relatives attesting to the fact that one of his great-grandparents was Native American. However, in his response to defendants' summary judgment motion, plaintiff states that he is not contending that he was discriminated against on the basis of his race, but rather that he was unable to purchase road salt from defendant Lincoln County even though other similarly situated persons were allowed to do so. Therefore, plaintiff's equal protection claim is merely duplicative of his First Amendment retaliation claim. *See Grossbaum v. Indianapolis–Marion County Bldg. Auth.,* 100 F.3d 1287 (7th Cir.1996) (citing *Vukadinovich v. Bartels,* 853 F.2d 1387, 1391–92 (7th Cir.1988) (plaintiff's allegation "that he was treated differently because he exercised his right of free speech" was "a mere rewording of [his] First Amendment-retaliation claim")). Accordingly, I will grant defendants' motion for summary judgment as to plaintiff's equal protection claim.

C. *State Law Claim*

No doubt out of an abundance of caution, defendants read plaintiff's amended complaint to contain a state law claim for tortious interference with his business. Even construing plaintiff's amended complaint liberally, I conclude that he has failed to state such a claim. Plaintiff's complaint alleges "[i]nterference with my business by Lincoln Co. Highway Dept., first by calling town of Scott chairman Eugene Mootz to tell him I could not do their work anymore as they would not provide me with the materials to do so, as I was informed at the Nov. monthly

meeting of Scott town board." As noted earlier, the Lincoln County Highway Department is not a defendant in this case. Because plaintiff does not identify who made the call to Eugene Mootz, he has failed to state a claim upon which relief may be granted. Accordingly, his state law tort claim will be dismissed.

## ORDER

IT IS ORDERED that

1. The motion for summary judgment of defendants Lincoln County and Lincoln County Highway Committee on plaintiff Alfred E. Schmidt's First Amendment retaliation and equal protection claims is GRANTED;

2. The motion for summary judgment of defendant Peter Kachel is DENIED as to plaintiff's First Amendment retaliation claim and GRANTED as to plaintiffs' equal protection claim.

3. On the court's own motion, plaintiff is GRANTED summary judgment on his First Amendment retaliation claim against defendant Kachel. The claim will proceed to trial on the issue of damages only.

4. Plaintiff's state law claim for tortious interference with his business is DISMISSED for plaintiff's failure to state a claim upon which relief may be granted.