John A. GAZARKIEWICZ, Plaintiff,

v.

**TOWN OF KINGSFORD HEIGHTS,**
et al, Defendants.

No. 3:02–CV–00150 CAN.

United States District Court,
N.D. Indiana,
South Bend Division.

May 27, 2003.

James B. Meyer, Rebecca L. Wyatt, Meyer & Wyatt PC, Gary, IN, for plaintiff.

Kristin A. Mulholland, Steven P. Polick, Sr., Steven P. Polick & Associates PC, Highland, IN, for defendants.

## MEMORANDUM AND ORDER

NUECHTERLEIN, United States Magistrate Judge.

Plaintiff, John A. Gazarkiewicz, initiated this action against Defendants, the town of Kingsford Heights, the town council, Ralph Harmon, and five town council members, on February 27, 2002, alleging that Defendants terminated his employment in violation the First and Fourteenth Amendments. Both Plaintiff and Defendants moved for summary judgment [Doc. No. 44] on April 14, 2003. The parties' motions were followed by Plaintiff's motion for leave to file his reply memorandum instanter [Doc. No. 45] and Defendants' motion to strike Plaintiff's reply memorandum [Doc. No. 46]. For the following reasons, Plaintiff and Defendants' motions for summary judgment [Doc. No. 44] are **GRANTED IN PART** and **DENIED IN PART**; Plaintiff's motion for leave to file his reply memorandum instanter [Doc. No. 45] is **DENIED**; and Defendants' motion to strike Plaintiff's reply memorandum [Doc. No. 46] is **GRANTED**.

### I. RELEVANT BACKGROUND

#### A. *Factual Background*

Plaintiff John A. Gazarkiewicz is a former employee of Defendant Town of Kingsford Heights ("the Town"). Kingsford Heights is a political subdivision of the State of Indiana and is headed by a town council ("the Council") composed of five members. In 2000, the Council hired Defendant Ralph Harmon as utilities superintendent for the Town.

During 2001, Town employees complained to the Council concerning Harmon's job performance. Employee criticism culminated on October 31, 2001 when the Council held a meeting with all Town employees to discuss employee grievances. At the meeting, the Council outlined a

grievance procedure for employees regarding the issuance of complaints concerning their supervisors. The procedure required employees to file a written complaint with the superior of the supervisor subject to the complaint. At the meeting, "[t]he employees were clearly informed of the requirement that this chain of command be followed for any complaints about a superior. [The employees were further informed that] [a]ny effort to discredit the superintendent, supervisor, or council by means outside the proper channels, would be considered a violation of the Town's employment policy." (Dft. Mot. at 2) (citing Willis Dep. at 16, ll. 1–24).

Earlier that month, Plaintiff typed a flyer entitled "WAKE UP CALL: Is He Worth It, Are They Worth It?" criticizing Defendant Harmon of poor job performance and alleging that Harmon had been accused of sexual harassment. The flyer reads as follows:

### "WAKE UP CALL"

I'm a homeowner in the Town of Kingsford Height's and have been for the past 11 years, recently our present Uility [sic] Superintendent was suspended with pay for not responding quickly about a hazardous spill involving a leaky electric transformer.

After the property owners called the Environmental Protection Agency "EPA", the "EPA" in turn told them to call hazmat, this caring Superintendent had the dirt removed and it was tested negative for contamination, shame, shame, shame for the delay.

This Superintendent in the short time of employment here has had numerous complaints filed against him from property owners, nothing done, some serious enough to have him dismissed had it happened at another corporation or factory, he even has had a harassment complaint filed against him in the past from another town employee, still nothing done.

Why would this town employ a person to sit at a desk for 38K a year with no knowledge of utilities and not a person who has 25 years of experience and certified in every aspect of town utilities for roughly the same amount?

Is this what our Government calls "PORK BARREL SPENDING"?

Our current Town Council Board, which by the way have been appointed by proxy, and not elected by the people should consider what the town can and cannot afford in these times of tradgic [sic] events, factory closings, high fuel cost's, and budget cuts nation wide to better serve the people of Kingsford Height's in a more efficient way, and not to just please a few. I ask again to the people of Kingsford Height's, would you rather pay for experienced personnel, qualified personel [sic], or inexperienced personel [sic]? These decisions made recently will reflect on the decisions made come election day. GOD BLESS AMERICA, GOD BLESS FREE ELECTIONS!

(Emphasis in original)

The flyer was signed by Robert Reese, a citizen of Kingsford Heights, and posted at a local grocery store. The parties agree that Plaintiff did not compose the flyer, but instead drafted the document at Reese's direction on Plaintiff's computer. The parties also agree that Plaintiff was aware that Reese intended to publish the document in some fashion.

In November 2001, Plaintiff was confronted by his supervisors concerning his involvement in posting the flyer. Plaintiff subsequently drafted a letter of apology for his involvement with the flyer on November 21, 2001. Plaintiff's letter was presented to the Council at a public meeting on November 28, 2001. The parties

differ as to whether Plaintiff was allowed to discuss the letter with the Council. Defendants allege that Plaintiff was given the opportunity to defend his position and responded by telling the Council that they would hear from his lawyer. Plaintiff, conversely, alleges that he was given no opportunity to speak at the meeting. That evening, the Council voted to terminate Plaintiff's employment.

### B. *Procedural Background*

Plaintiff initiated this suit on February 27, 2002 against the Town of Kingsford Heights, the Council, Ralph Harmon, and the five town council members.[1] Plaintiff's complaint alleges six counts: (1) that he was terminated in violation of his First Amendment free speech rights; (2) that his termination violates his right to free speech as contained in Article One of the Indiana Constitution; (3) that Defendants denied him procedural due process; (4) that Defendants violated Plaintiff's substantive due process; (5) that Defendants violated Plaintiff's First Amendment right of freedom of association; and (6) that Defendants deprived Plaintiff of earned vacation pay. On April 14, 2003, both Plaintiff and Defendants moved for summary judgment on various counts. On April 18, 2003, Plaintiff moved to file a reply memorandum to his motion for summary judgment instanter. Defendants responded to Plaintiff's motion by filing a motion to strike on April 28, 2003. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and over Plaintiff's supplemental state claims pursuant to 28 U.S.C. § 1367. This Court may rule on these motions pursuant to the parties' consent and 28 U.S.C. § 636(c).

### II. PRELIMINARY MATTERS

#### A. *Plaintiff's Motion to File Instanter; Defendant's Motion to Strike*

■ On July 8, 2003, this Court set the original deadline for filing fully briefed dispositive motions at March 3, 2003. Accordingly, Defendants served Plaintiff with their motion for summary judgment on January 17, 2003. On January 30, 2003, in response to Plaintiff's motion to compel, this Court suspended the dispositive motion deadline pending resolution of Plaintiff's motion. This Court granted Plaintiff's motion in part on February 18, 2003, and reset the dispositive motion briefing schedule as follows:

> Plaintiff shall have until March 31, 2003 to serve Defendants with his response to Defendants' motion for summary judgment. Pursuant to Fed.R.Civ.P. 56 and N.D. L.R. 56.1, Defendants will then have until April 15, 2003 to serve Plaintiff with their reply, if any, and file the fully briefed motion for summary judgment with this Court.

[Doc. No. 42]

Plaintiff served Defendants with his response to Defendants' motion for summary judgment on April 1, 2003. Plaintiff's response, however, also included Plaintiff's cross motion for summary judgment. At no time did either party address the impact which Plaintiff's filing would have on the summary judgment deadline. Instead, Plaintiff waited until April 18, 2003, three days after the deadline for filing dispositive motions, to file a motion to file Plaintiff's reply brief instanter [Doc. No. 45]. Defendants subsequently filed a motion to strike Plaintiff's reply [Doc. No. 46] on April 28, 2003.

---

1. The council members are as follows: Harry Morrison, Evelyn Ballinger, Van Willis, Kevin Williamson, and Frank Underwood. Each member was sued in their individual and official capacities.

The purpose of filing fully briefed motions for summary judgment is to avoid the action Plaintiff currently seeks. The fully briefed procedure affords parties the opportunity to communicate with each other and set internal deadlines for the service of briefs so long as a fully briefed motion is filed with the court by a specified date. Rather than communicate with defense counsel and work out a mutually agreeable plan to have a complete motion for summary judgment before the court by April 15, 2003, or request that this Court alter the deadline for filing fully briefed dispositive motions to accommodate the disposition or this case, Plaintiff served Defendants with an entirely new motion for summary judgment on April 1, 2003, giving Defendants only fifteen days to respond to Plaintiff's motion and allowing no time for a reply.

Defendants were undoubtedly prejudiced in responding to Plaintiff's cross motion in fifteen days as opposed to the thirty days contemplated by the federal rules. Plaintiff had forty-one days from this Court's rescheduling of the dispositive motion deadline until Plaintiff served Defendants with his response/cross motion in which Plaintiff could have contacted defense counsel or this Court regarding the need to reschedule deadlines. This Court will not allow Plaintiff to contravene its scheduling procedure by filing a *post hoc* reply. Therefore, Plaintiff's motion to file his reply brief instanter [Doc. No. 45] is **DENIED**. Accordingly, Defendants' motion to strike Plaintiff's reply [Doc. No. 46] is **GRANTED**.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir.2001). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well as draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir.1999).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir.2000); *See also* N.D.L.R. 56.1(b) ("In determining a motion for summary judgment, this Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted ... as supported by the depositions, discovery responses, affidavits, and other admissible evidence on file."). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First National Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

### IV. SECTION 1983

█ Plaintiff's complaint was brought under 42 U.S.C. § 1983. In order to sus-

tain a § 1983 claim, a plaintiff must establish that the alleged violations were committed by a state actor, or, as stated in the statute, under "color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Defendants do not contest that their actions were conducted under color of state law. (Dft. Answer at ¶ 31).

## V. PLAINTIFF AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants moved for summary judgment on six issues: (1) whether Plaintiff's conduct constitutes speech under the First Amendment; (2) whether Plaintiff is able to carry his burden of proof regarding his retaliation claim; (3) whether Defendants' conduct violated Plaintiff's procedural due process; (4) whether Defendants' conduct violated Plaintiff's substantive due process; (5) whether Defendant Harmon can be held liable for Plaintiff's alleged injuries; and (6) whether Plaintiff is entitled to vacation pay. In his response / cross motion, Plaintiff moved for summary judgment on four issues: (1) whether Defendants' grievance policy constitutes an unconstitutional prior restraint on speech; (2) whether Plaintiff's termination violated the First Amendment and Article One of the Indiana Constitution; (3) whether Defendants' conduct violated Plaintiff's substantive due process rights; and (4) whether Plaintiff is entitled to vacation pay. This order will address the parties' motions concurrently regarding counts on which both Plaintiff and Defendants have moved for summary judgment.

### A. *Summarily Granted Matters: Procedural Due Process, Freedom of Association, and Defendant Harmon's Liability*

■ As stated in Section III, a nonmoving party cannot rest on the mere allegations or denials contained in its pleadings to overcome a motion for summary judgment. Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1088 (7th Cir.2000); *See also* N.D.L.R. 56.1(b) ("In determining a motion for summary judgment, this Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted ... as supported by the depositions, discovery responses, affidavits, and other admissible evidence on file.").

Defendants moved for summary judgment on Plaintiff's procedural due process claim (Count III of Plaintiff's complaint), Plaintiff's freedom of association claim (Count V of Plaintiff's complaint), and Plaintiff's claims against Defendant Harmon in his official and individual capacities.

Plaintiff failed to respond to these portions of Defendants' motion in any way. Consequently, this Court can only assume that Plaintiff accepts the facts and allegations presented in Defendants' motion with regard to these issues. Therefore, Defendants' motion for summary judgment as it pertains to Plaintiff's procedural due process claim, Plaintiff's freedom of association claim, and Defendant Harmon's official and individual liability is GRANTED.

### B. *Plaintiff's First Amendment Claims*

#### 1. *Plaintiff's Involvement in Drafting Reese's Flyer Constitutes Speech*

■ Defendants move for summary judgment on the issue of whether Plaintiff's flyer constitutes speech under the First Amendment. Defendants argue

that, because Plaintiff merely typed Roger Reese's message onto a flyer rather than composing his own document, the flyer cannot be considered speech with regards to Plaintiff.

Defendants cite *Barkoo v. Melby* in support of their argument. In *Barkoo*, a municipal employee alleged that her employer retaliated against her because they thought that she leaked information to the media. The plaintiff, however, emphatically denied that she ever spoke to the media. The Seventh Circuit thus held that no cause of action could lie under § 1983 because no speech actually occurred. *Barkoo v. Melby*, 901 F.2d 613, 619 (7th Cir. 1990) ("Every § 1983 case relating to workplace freedom of speech...discusses the actual speech engaged in by the employee").

Unlike the plaintiff in *Barkoo*, Plaintiff, while not composing the flyer, played a significant role in its publication. Further, Plaintiff's termination for insubordination was triggered by his involvement with the flyer regardless of whether Plaintiff composed the flyer or was merely Reese's instrument in drafting the document.

Defendants also cite several nonbinding authorities in support of their argument. Defendants' first cite *Fogarty v. Boles*, a Third Circuit case in which the court held that a school teacher could not bring a First Amendment retaliation claim where the defendant employer mistakenly believed that the teacher had contacted the press. *See Fogarty v. Boles*, 121 F.3d 886 (3rd Cir.1997). Defendants also cited *Jones v. Collins*, a Fifth Circuit case in which the court found no cause of action under § 1983 where a plaintiff teacher never spoke to the public concerning decisions of the defendant school board. *See Jones v. Collins*, 132 F.3d 1048 (5th Cir. 1998). As with *Barkoo*, there is a marked difference between the present situation and the cases cited. Here, while Plaintiff

may not have been solely responsible for the flyer, he took part in its drafting. Because speech took place which can be attributed to Plaintiff in part, Defendant's motion as it pertains to this issue is DENIED.

### 2. *Plaintiff's Retaliation Claim*

Both parties moved for summary judgment on the issue of whether Plaintiff's termination for his part in posting the flyer violated his right to freedom of speech. Defendants contend that Plaintiff is unable to carry his burden of proof under the appropriate legal standard, while Plaintiff contends that summary judgment should be granted in his favor.

The Seventh Circuit has prescribed a three-step analysis in evaluating First Amendment retaliation claims under 42 U.S.C. § 1983. *See Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir.2002). Under the analysis, this Court must first determine whether Plaintiff's speech is constitutionally protected. *Id.* Upon determination of the speech's constitutional protection, it is then necessary to establish if Defendants' actions were motivated by Plaintiff's constitutionally protected speech. *Id.* Plaintiff bears the burden on the first two prongs of this analysis. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir.1992). Finally, if Plaintiff can establish that his constitutionally protected speech was a substantial or motivating factor in his termination, Defendants may rebuff Plaintiff's claim by showing that they would have taken the same action in the absence of his protected speech. *Vukadinovich*, 278 F.3d at 699. If Defendants carry their burden on the third prong of the analysis, Plaintiff has a final chance of showing that Defendants' proffered reasons for termination are pretextual. *Id.*

### a) *Constitutional Protection*

■ Determining whether Plaintiff's speech was constitutionally protected is a question of law. *Kokkinis v. Ivkovich,* 185 F.3d 840, 843 (7th Cir.1999). The determination of whether speech is constitutionally protected is governed by the two-prong test set forth in *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Under the *Pickering–Connick* test, this Court must first determine whether Plaintiff's speech encompassed a matter of public concern. If Plaintiff's speech addressed a matter of public concern, it is then necessary to balance Plaintiff's interest in commenting upon such matters against Defendants' interest in maintaining efficient public services. *Wainscott v. Henry,* 315 F.3d 844, 848 (7th Cir.2003).

### 1) *Plaintiff's Flyer Commented on Matters of Public Concern*

■ In evaluating whether Plaintiff's flyer dealt with a matter of public concern, this Court must examine "the content, form, and context of a given statement as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. Content is the most important factor in this determination. *Wainscott,* 315 F.3d at 849; *Yoggerst v. Hedges,* 739 F.2d 293, 296 (7th Cir.1984). Speech is directed at a matter of public concern if it relates to any matter of "political, social, or other concern to the community." *Wainscott,* 315 F.3d at 849; *Kuchenreuther v. City of Milwaukee,* 221 F.3d 967, 973 (7th Cir. 2000). Conversely, speech is not directed at a matter of public concern if it merely addresses a personal grievance of interest only to the employee. *Gustafson v. Jones,* 290 F.3d 895, 907 (7th Cir.2002).

"Whether [a] city is run in an efficient and effective manner is clearly an impor-

tant matter of public concern. An employee's ability to highlight the misuse of public funds or breaches of public trust is a critical weapon in the fight against government corruption and inefficiency." *Wainscott,* 315 F.3d at 849 (citing *Propst v. Bitzer,* 39 F.3d 148, 152 (7th Cir.1994)). Plaintiff's flyer, while ineloquent in form, addressed several issues of concern to the public. The flyer addressed Defendant Harmon's suspension due to a transformer leak as well as a harassment claim filed against Harmon by a female employee. Defendants concede that these issues were matters of public knowledge. (Dft. Motion at 8). The issues set forth in the flyer clearly address public employees, their conduct, and local issues. In light of the above standard and Defendants' concession, this Court holds that the issues addressed in Plaintiff's flyer were matters of public concern.

### 2) *Balance of Interests*

■ Having established that Plaintiff's speech addressed a matter of public concern, it is now necessary to balance Plaintiff's interest in commenting on these matters against Defendants' interest in efficient government services. This Court considers seven factors when balancing Plaintiff and Defendants' interests: (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform his responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public. *Greer v. Amesqua,* 212 F.3d 358, 371 (7th Cir.

2000). The proper balance of these competing interests is a question of law. *Propst v. Bitzer,* 39 F.3d 148, 153 (7th Cir.1994). The government bears the burden of showing that its interests outweigh the interests of its employee. *Wainscott,* 315 F.3d at 851. In light of the facts presented by the parties, Defendants have carried their burden.

Plaintiff's flyer did not take place in a vacuum. It was posted during a contentious period between Town employees, Harmon, and the Council. As previously stated, the Council established the grievance procedure in order to avoid spreading unfounded rumors concerning public employees throughout Kingsford Heights and to quell disruption between the Town and its employees. Hence factors 1 and 5 cut in Defendants' favor. *See Waters v. Churchill,* 511 U.S. 661, 677–681, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (holding that a public employer has the right to consider the potential disruption of its employee's speech).

Factors 4 and 6 also favor Defendants' interests. The issues raised in Plaintiff's flyer were not vital to informed decision making. Rather, the matters raised in Plaintiff's flyer had been previously investigated by the Council at public hearings and determined to be unsubstantiated. (Dft. Motion at 8) (citing Underwoood Dep. at 11, ll. 1–21; 12, ll. 14–25; 13, ll. 1–13; 14, ll. 19–25).[2] Further, considering the undercurrent of dissension between Town employees and the Council's efforts to deal with disputes, the flyer's placement in public only added to the turmoil facing the Council.

Factor 2, whether Plaintiff's employment relationship is one in which personal loyalty and confidence is necessary, favors Plaintiff. Plaintiff was not a high-level employee by any means, and there is no indication that his loyalty was a necessary part of his job performance. Neither party has provided any information concerning the effect the flyer had on Plaintiff's employment responsibilities, factor 3; and factor 7, whether Plaintiff should be regarded as a member of the general public cuts in both directions seeing as the flyer was a joint effort between Plaintiff, a Town employee, and Reese, a Town resident.

■ Plaintiff does little to tip the balance of the above factors in his favor. Plaintiff relies on the fact that the matters addressed in the flyer were publicly known and seems to infer that this fact alone outweighs Defendants' interests in efficient governmental operation. *See* (Dft. Cross Motion at 14) (citing *Wainscott,* 315 F.3d at 849). Plaintiff's argument, while focusing on the flyer's content, does little to address the balance of interests in this matter. In balancing these interests, this Court must "look to the facts as the employer reasonably found them to be, as opposed to what the employee claims occurred." *Wainscott,* 315 F.3d at 851 (citing *Waters v. Churchill,* 511 U.S. at 677, 114 S.Ct. 1878). Because Plaintiff has presented so little evidence showing that his speech interests outweigh Defendants' interests in efficient governmental operation, Plaintiff is unable to carry his burden of proof as to whether the flyer was constitutionally protected speech. Therefore, Defendants' motion as it pertains to Plaintiff's ability to carry his burden on this issue is GRANTED. Accordingly, Plaintiff's motion as it pertains to the same issue is DENIED.

---

**2.** Plaintiff has submitted no evidence to rebut Defendants' contention that the topics addressed in the flyer were unsubstantiated. Under N.D. L.R. 56.1(b), this Court will therefore assume that Defendants' contention is admitted to exist without controversy.

b) *Remaining Portions of First Amendment Retaliation Analysis*

Having found that Plaintiff's speech was not constitutionally protected, it is unnecessary to proceed with the remaining tests under the Seventh Circuit's First Amendment employment analysis. Assuming, *arguendo*, that Plaintiff's interest outweighed Defendants', Plaintiff is still unable to prevail under the remaining prongs of the First Amendment analysis.[3]

 The second and third prongs of the Seventh Circuit's First Amendment analysis allows defendant employers to proffer evidence either that an employee was fired for reasons other than speech or that the employee would have been terminated regardless of his speech. Defendants have proffered unopposed evidence under both tests. Regarding Defendants' motivation in terminating Plaintiff, Defendants maintain that Plaintiff was terminated for holding a "grudge" against Defendant Harmon (Morrison Dep. at 24, ll. 6–21; 35 ll. 23–25; 36, ll. 1–12), and that the Council had not even read the flyer when they decided to terminate Plaintiff. (Gazarkiewicz Dep. at 42, ll. 12–13).

Regarding alternate motivations for Defendants' action, the record is replete with examples of Plaintiff's poor job performance, affording Defendants numerous reasons to terminate Plaintiff apart from his speech. *See* (Gazarkiewicz Dep. at 17, ll.2–25; Harmon Dep. at 35, ll. 22–25; 36, ll. 1–7) (stating that Plaintiff failed to obtain a commercial drivers' license as required by his job); (Harmon Dep. at 33, ll. 5–17; 34, ll. 11–12, 17–19) (regarding Plaintiff's destructive handling of work vehicles); (Harmon Dep. at 35, ll. 9–15) (regarding Plaintiff's inability to perform his duties at the Town's water treatment plant); (Willis Dep. at 13, ll. 1–9) (regarding Plaintiff's insubordination).

Lastly, Plaintiff is unable to circumvent Defendants' proffered reasons for his termination. To show that Defendants' reasons for his termination were pretextual Plaintiff must show that Defendants' justifications have no basis in fact, Defendants' justifications were not the real reason for firing him, or Defendants' justifications were insufficient to warrant his termination. *Vukadinovich,* 278 F.3d at 700. As previously stated, Plaintiff has set forth no evidence to rebut Defendants' contentions and therefore is unable to establish that Defendants' reasons for Plaintiff's termination were pretextual. Therefore, even if Plaintiff had been able to establish that his the flyer constituted constitutionally protected speech, Plaintiff is unable to sustain judicial scrutiny under the remaining prongs of the Seventh Circuit's First Amendment employment analysis.

### 3. *Prior Restraint on Speech*

Plaintiff's motion for summary judgment urges this Court to hold that Defendants grievance policy constitutes an unconstitutional prior restraint on employee speech.

### a) *Preliminary Objections*

 Defendants, without citing any authority, preliminarily argue that Plaintiff's argument should be stricken because the issue of whether Defendants' grievance policy constituted a prior restraint on speech was not pled in Plaintiff's original complaint. "It is not necessary to specify particular legal theories in a complaint, so long as the facts alleged give adequate

---

**3.** Although Plaintiff's cross motion moved for summary judgment on Plaintiff's entire First Amendment claim, Plaintiff's motion failed to address the portions of the First Amendment employment analysis beyond determining whether Plaintiff's speech was constitutionally protected. Under N.D. L.R. 56.1(b) this Court accordingly accepts the facts as provided by Defendants on these matters.

notice to the defendant of the basis of the suit." *Wudtke v. Davel* 128 F.3d 1057, 1061 (7th Cir.1997) (regarding a motion to dismiss); *see also Mid America Title Co. v. Kirk,* 991 F.2d 417, 421 (7th Cir.1993) ("A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents... the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal"). Plaintiff's complaint described Defendants' grievance policy (Pla. Complaint at ¶ 16) and loosely classified Plaintiff's legal theories as violations of the federal and state constitutions. (*Id.* at 5–6). The complaint gave Defendants notice that the case would deal with both Plaintiff's termination and Defendants' grievance policy, and therefore should not be stricken.

■ Defendants also argue, again without citing any authority, that Plaintiff has no standing to challenge Defendants' policy because he is no longer employed by the Town. To establish standing, a plaintiff must show (1) injury-in-fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendants' actions; and (3) that a favorable decision is likely to redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Tobin for Governor v. Illinois State Board. of Elections,* 268 F.3d 517, 527 (7th Cir.2001). Regarding the "injury-in-fact" requirement, the plaintiff must establish that he has sustained or is immediately in danger of sustaining some direct injury. *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Tobin,* 268 F.3d at 528. "Abstract injury is not enough." *Id.* Plaintiff easily satisfies this minimal standard. Plaintiff suffered an injury-in-fact by losing his job which can be causally connected

to Defendants' grievance policy as well as redressed by a favorable decision.

### b) *Applicable Standard*

■ The parties disagree on the applicable legal standard to apply to Plaintiff's prior restraint claim. Defendants argue that Plaintiffs' claim should be governed by the same standard governing Plaintiff's retaliation claim set forth in *Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), while Plaintiff argues that his prior restraint claim should be governed by the standard laid out in *U.S. v. National Treasury Employees Union,* 513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) ("*NTEU*").

The Seventh Circuit dealt with these two cases in *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742 (7th Cir.1999). In *Jones,* the Milwaukee police department issued a policy prohibiting its officers from discussing internal complaints with the public, including a complainant's attorney or union representative. The policemen's union brought suit alleging that the restriction constituted a prior restraint on its members' First Amendment rights. The court chose to apply the standard set forth in *NTEU,* reasoning that the restriction at issue was a general ban on speech rather than an "isolated disciplinary response to speech that has already occurred." *Jones* 192 F.3d at 750.

Similar to the regulation at issue in *Jones,* Defendants' grievance procedure applied to all employee complaints, not simply Plaintiff's flyer. Whereas Plaintiff's retaliation claim was judged under the analysis outlined in *Pickering,* Plaintiff's prior restraint claim, like the claim in *Jones,* must be judged under the standard outlined in *NTEU.*

c) *Analysis*

■■■■ "The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. U.S.*, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (citing M. Nimmer, *Nimmer on Freedom of Speech* § 4.03) (emphasis in original). This Court begins its analysis by noting the legal axiom that "[a]ny system of prior restraints comes to [a court] bearing a heavy presumption against its constitutional validity." *New York Times v. United States*, 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). While taking heed of this presumption, this Court must remain "mindful of the Supreme Court's admonition [to] give full and careful consideration to the 'government's interest in the effective and efficient fulfillment of its responsibilities to the public,'" *Zook v. Brown*, 865 F.2d 887, 890–91 (7th Cir.1989) (citing *Connick*, 461 U.S. at 150, 103 S.Ct. 1684). This Court must further note that "the government, as an employer, must have wide discretion and control over the management of its personnel and internal affairs [including] the prerogative to remove employees whose conduct hinders efficient operation and do so with dispatch." *Connick*, 461 U.S. at 151, 103 S.Ct. 1684 (citing *Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)).

In discussing the application of the *NTEU* standard, the court in *Jones* noted that the context in which a speech restriction occurs can affect the level of scrutiny applied in prior restraint cases. *Jones* 192 F.3d at 749. For instance, "where the government is acting as an employer, the employment context is relevant in determining the appropriate level of scrutiny in a case of prior restraint just as in a *post hoc* disciplinary situation." *Id.* at 749 (citing *Zook*, 865 F.2d at 890–91).

■■■■ The Government's burden is greater in prior restraint cases than in situations dealing with an isolated disciplinary action. *NTEU*, 513 U.S. 454, 468, 115 S.Ct. 1003, 130 L.Ed.2d 964. In cases such as Plaintiff's, "the Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Id.* (citing *Pickering*, 391 U.S. at 571, 88 S.Ct. 1731); *see also Jones*, 192 F.3d at 750 (citing the above standard); *Crue v. Aiken*, 204 F.Supp.2d 1130, 1141 (C.D.Ill. 2002) (ruling on a prior restraint issue as a matter of law).

Hence, in applying *NTEU* to Defendants' grievance policy, this Court must balance Defendants' interest in restricting criticism over its supervisory employees against Plaintiff, other putative employee complainants, and hypothetical audiences' interests in hearing such criticism. In light of Defendants' ability to prevail under the balance test for First Amendment retaliation claims under *Pickering* and *Connick*, Defendants's interests also outweigh Plaintiff's concerns with regard to Defendants' grievance policy under *NTEU*.

The primary obstacle preventing summary judgment in Plaintiff's favor is the composition of the actual prohibition placed on Defendants' employees. Plaintiff cites the deposition of Evelyn Ballinger regarding the regulation:

Question: What were [Town employees] told about speaking in public about problems?

Answer: I can't really say that we [the Council] ever told them they couldn't speak anything in public, but the common consensus was what was said

in this room should stay in this room. You know, you don't want all of your business out in the street. So that's basically it. (Pla. Cross Motion at 6) (citing Ballinger Dep. at 17, ll. 4–11).

Ballinger's testimony seems to indicate that the October 31, 2001, meeting was merely an informal session during which employees could openly criticize their supervisors and the Council could explain their reasons for quelling employee dissent. This interpretation is bolstered by the deposition of Van Willis as presented by Defendants: "Any effort to *discredit* the superintendent, supervisor, or council by means outside the proper channels would be considered a violation of the Town's employment policy." (Dft. Mot. at 2)(citing Willis Dep. at 16, ll. 1–24) (emphasis added). Willis's testimony also indicates that there was not a total ban on employee speech, merely a ban on unfounded criticism outside of the Town's chain of command. *See also* (Underwood Dep. at 10) (failing to recall whether there was any discussion at the October 31, 2001, meeting concerning public speech). Further confusion as to the composition of Defendants' regulation is added by Plaintiff's statement that the Town's employee policy fails to reflect what was stated at the October 31, 2001, meeting: "Interestingly, when the policy was finally written into the employee handbook, it was nothing like what was stated at the employee's [sic] meeting." (Dft. Cross Motion at 6).[4] Because Plaintiff has given no evidence that a blanket restriction on employee speech even existed, Plaintiff's motion for summary judgment should be denied on this ground alone.

Even if this Court assumes that Defendants' policy was as restrictive as Plaintiff contends, Defendants still have carried their burden of showing that their interest in restricting speech outweighs Defendants' employees' interest in publicly complaining about their supervisors. As previously discussed, the entire reason for Defendants' grievance procedure was to quell the dissemination of unfounded rumors concerning Town supervisors and establish a means to address employee complaints.

As previously stated, a public employer has the right to consider the potential disruption of its employee's speech. *Waters,* 511 U.S. at 677–681, 114 S.Ct. 1878. Defendants' policy was not crafted in light of a potential disruption, it was enacted against the backdrop of constant employee complaints. *See* (Underwood Dep. at 7, ll. 4–19) (stating that approximately half the Council's time was spent dealing with employee complaints, "slander," and "name-calling" which was "way out of hand"). It stands to reason that a municipal employer would want to prevent the public dissemination of internal complaints until they had been reviewed by an internal supervisor. Defendants interest in enacting the grievance policy, regardless of the policy's exact composition, outweighed Plaintiff and other employees' interest in unfettered public speech. This Court therefore holds that Defendants' grievance procedure was not an unconstitutional prior restraint on employee speech. Plaintiff's motion for summary judgment as it pertains to Defendant's grievance policy is **DENIED.** All Plaintiff's First Amendment claims having been denied, this Court **DISMISSES** Plaintiff's claims under Article One of the

---

**4.** The addition to the employee handbook is as follows: "The superintendent must be notified of the complaint by the council and the superintendent will follow up with a written report of the incident to each council member before the review" (Pla. Exhibit C)

Indiana Constitution pursuant 28 U.S.C. § 1367(c)(3).

## C. *Plaintiff's Substantive Due Process Claim*

■ Both parties moved for summary judgment concerning Plaintiff's substantive due process allegations. Count IV of Plaintiff's complaint alleges that Defendant's "decision to terminate Plaintiff's employment was arbitrary and capricious [with] the specific intent to embarrass, humiliate, harm and cause severe emotional distress to Plaintiff with the purpose to send a message to silence their critics and to eliminate political opposition." (Pla. Complaint at ¶ 47–48). Plaintiff's complaint further alleges that Defendants' "action shocks the conscience and rises to the level of a violation of Plaintiff's right to Substantive Due Process." *Id.* at ¶ 50.

■ Challengers to government decisions on substantive due process grounds must show "(1) that the decision was arbitrary and irrational, and (2) that the decision-makers either committed another substantive constitutional violation or that state remedies are inadequate." *Strasburger v. Board of Educ., Hardin County Community Unit School Dist. No. 1,* 143 F.3d 351, 357 (7th Cir.1998) (citing *Kauth v. Hartford Ins. Co.,* 852 F.2d 951, 958 (7th Cir.1988)); *See also Remer v. Burlington Area School Dist.,* 286 F.3d 1007, 1013 (7th Cir.2002) (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)) ("the touchstone of due process ... is protection of the individual against arbitrary action of government.").

■ Establishing that a decision was arbitrary and irrational is a high standard. "Only the most egregious official conduct is arbitrary in the constitutional sense." *Id.* (quoting *Lewis,* 523 U.S. at 846, 118 S.Ct. 1708). An abuse of power is only arbitrary if it "shocks the conscience."

Hence, a plaintiff alleging such abuse "must show that the official conduct is unjustifiable by *any* governmental interest." *Id.* (emphasis in original).

Plaintiff gives two arguments as to why Defendants' action should be considered arbitrary and irrational. Plaintiff first states that "less than three months after the terrorist attack of September 11, 2001 and less than one month before Christmas, [Defendants] terminated Gazarkiewicz, leaving him unemployed, with a pregnant wife, a teenaged son and in the middle of an adoption of his five year old niece." (Pla. Cross Motion at 16). This Court recognizes that any job loss affects an individual's family. Plaintiff, however, has provided absolutely no legal support for this argument and is unable to establish the arbitrariness of Defendants' decision merely by invoking images of hearth and home.

Plaintiff next argues that Defendants' decision to terminate Plaintiff was arbitrary because "no employee has been disciplined so severely, prior to or subsequent to Gazarkiewicz's termination." *Id.* at 17. Again, Plaintiff cites no law as to why this Court must consider Defendants' treatment of other employees, none of whom were similarly situated to Plaintiff, when considering whether Defendants' decision to terminate Plaintiff was arbitrary.

Defendants, conversely, provide several reasons for Plaintiff's termination. *See* (Underwood Dep. at 26, ll. 15–19; Willis Dep. at 5, ll. 12–24) (stating that Plaintiff was terminated for being insubordinate, not following the chain of command, having a poor attitude towards his superiors, and acting belligerent). Plaintiff simply cannot show that there were no governmental interests behind his termination. Defendants' decision to terminate Plaintiff was not completely arbitrary. Therefore, Plaintiff's motion for summary judgment

concerning Count IV of his complaint is **DENIED**. Accordingly, Defendants' motion on the same issue is **GRANTED**.

### D. *Plaintiff's Claim for Vacation Pay*

██ Both parties moved for summary judgment regarding Plaintiff's claims for vacation pay. Count VI of Plaintiff's complaint alleges that Defendants failed to pay Plaintiff for accrued vacation time as of his termination date in violation of Ind.Code 22–2–4–4.[5]

Kingsford Heights town ordinance 2–16–020 states that "full time personnel are eligible for paid vacation time." (Kingsford Heights Town Ordinance 2–16–020). The ordinance goes on to state that vacation days "can be used after [an employee's] anniversary date." *Id.* An employee's date of hire is used to determine eligibility for vacation pay. *Id.* Plaintiff began his employment with the Town in May 2001 and was terminated on November 28, 2001, approximately six and one-half months after his date of hire. Defendants argue that Plaintiff is not entitled to vacation pay because Plaintiff's pay had not accrued as of Plaintiff's termination.

Plaintiff cites Ind.Code 22–2–5–1, arguing that "Gazarkiewicz is entitled to any and all benefits that he accrued." (Pla. Cross Motion at 17). Ind.Code 22–2–5–1 does not support Plaintiff's contention, and Plaintiff's argument is unsupported by relevant caselaw.

In *Damon Corp. v. Estes*, the Indiana Court of Appeals held that an employee terminated before his anniversary was not entitled to vacation pay because the employer's published policy stated that employees did not earn vacation pay until their anniversary date. *Damon Corp. v. Estes*, 750 N.E.2d 891, 892 –893 (Ind.Ct. App.2001). The court reasoned that the specific company policy with respect to vacation pay determined the employee's pay accrual date, and, consequently, prevented accrual of pay prior to the date specified. *Id.*

Plaintiff's case mirrors the situation in *Damon.* Like the Damon Corp. employment policy, the Kingsford Heights ordinance specifically states that an employee's hiring date determines eligibility for vacation pay. Because Plaintiff was terminated prior to his anniversary date, his vacation pay never accrued and Plaintiff is not entitled to receive vacation pay from Defendants. Hence, Plaintiff's motion for summary judgment with regard to vacation pay is **DENIED**. Accordingly, Defendants' motion with regard to vacation pay is **GRANTED**.

### VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file his reply memorandum instanter [Doc. No. 45] is **DENIED**. Defendants' motion to strike Plaintiff's reply memorandum [Doc. No. 46] is **GRANTED**. Plaintiff and Defendants' motions for summary judgment [Doc. No. 44] are **GRANTED IN PART** and **DENIED IN PART**. Specifically, this Court rules as follows:

- Defendants' motion for summary judgment is **DENIED** as to Defendants' argument that Plaintiff's flyer did not constitute speech. Defendants' motion is **GRANTED** as to all other counts.

---

**5.** Ind.Code 22–2–4–4 reads as follows: "Every corporation, limited liability company, company, association, firm, or person who shall fail for ten (10) days after demand of payment has been made to pay employees for their labor, in conformity with the provisions of this chapter, shall be liable to such employee for the full value of his labor, to which shall be added a penalty of one dollar ($1) for each succeeding day, not exceeding double the amount of wages due, and a reasonable attorney's fee, to be recovered in a civil action and collectable without relief."

- Plaintiff's motion for summary judgment is **DENIED** on all counts.
- Plaintiff's claims under Article One of the Indiana Constitution are **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3).
- The final pretrial conference set for June 30, 2003 and the jury trial currently set for July 15, 2003 are **VACATED**.
- The clerk is **ORDERED** to enter judgment in favor of Defendants.

**SO ORDERED.**